1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID LIONEL CARPENTER,                No.  2:20-cv-0908 WBS CSK P

12              Petitioner,

13        v.                                FINDINGS & RECOMMENDATIONS

14   MARCUS POLLARD, Warden,

15              Respondent.

16

17        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for kidnapping,

19   inflicting corporal injury, and criminal threats. This matter is fully briefed.  After careful review

20   of the record, this court concludes that the petition should be denied.

21   I. PROCEDURAL BACKGROUND

22        A.  State Court History

23        On September 17, 2015, in the Butte County Superior Court, petitioner was convicted of

24   kidnapping, inflicting corporal injury, and criminal threats.  People v. David Lionel Carpenter,

25   Case No. CM042939.  (ECF No. 21-1.)  Two strike allegations were sustained by the trial court,

26   and petitioner was sentenced on May 23, 2016, to an indeterminate state prison term of fifty years

27   to life plus four years.  (ECF No. 21-1.)

28

Petitioner filed an appeal.  Following initial briefing on the appeal (ECF No. 42-10 to 42-12), supplemental briefing on appeal was also filed.  (ECF Nos. 42-13 to 42-15.)  On September 14, 2018, the California Court of Appeal reversed the trial court's finding that petitioner's prior federal conviction for bank robbery was a strike and remanded the action to the trial court for further proceedings.  People v. David Lionel Carpenter, Case No. C082288.  (ECF No. 21-2.) The judgment was otherwise affirmed.

Petitioner did not file a petition for review in the California Supreme Court.

On January 23, 2019, the trial court held a court trial on the strike allegation.  People v. David Lionel Carpenter, Case No. CM042939.  (ECF No. 42-18.)  The trial court permitted new evidence to be submitted by the People, and found such new evidence met the definition of a strike, reimposed the strike allegation, and re-affirmed the prior sentence.  (ECF No. 42-18 at 12.)

Petitioner filed an appeal.  (ECF No. 42-16 at 34.)  Such appeal was filed in the California Court of Appeal on January 25, 2019.  People v. Carpenter, Case No. C088740.  (ECF No. 21-4.) On July 12, 2019, petitioner abandoned the appeal so he could immediately pursue his habeas remedies in the superior court.  (ECF No. 42-19 at 2.)  The appeal was dismissed on July 19, 2019.  (ECF Nos. 21-4; 42-19 at 1.)

On August 5, 2019,[1] petitioner filed his first pro se habeas corpus petition in the Butte County Superior Court.  Carpenter v. People of the State of Cal., Case No. CM042939.  (ECF No. 21-6.)  Petitioner raised claims of prosecutorial misconduct, judicial misconduct, and ineffective assistance of pretrial and trial counsel.  (Id.)  The petition was denied on September 13, 2019, as follows:

> The petition is denied because it asserts claims that were raised, or could have been raised, on appeal.  Petitioner has failed to establish an exception to the rule barring reconsideration of such claims.  (In re: Harris (1993) 5 Cal. 4th 813, 825-26; In re: Waltreus (1965) 62 Cal. 2d 218, 225; In re: Dixon (1953) 41 Cal. 2d 756, 759).
>
> The petitioner has failed to establish special circumstances constituting an excuse for failure to raise an issue on appeal.  The Writ will not lie where the claimed errors could have been, but were

---

[1]  Petitioner's filings are given benefit of the mailbox rule.  See Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (under the mailbox rule, the petition is deemed filed when handed to prison authorities for mailing and applies to both state and federal filings by incarcerated parties).

not, raised upon a timely appeal from a judgment of conviction (*In re: Walker* (1974) 10 Cal. 3rd 764, 773; *In re: Clark* (1993) 5 Cal. 4th 750, 765).

Issues resolved on appeal cannot be reconsidered by Writ of Habeas Corpus/Mandamus (*In re: Waltreus* (1965) 62 Cal.2d 218, 225).

(ECF No. 21-7.)

On October 27, 2019, petitioner filed a pro se habeas corpus petition in the California Court of Appeal. Carpenter v. People of the State of Cal., Case No. C090750. (ECF No. 21-8.) Petitioner raised four claims: a violation of due process based on the trial court's failure to address the merits of his claims, two claims of ineffective assistance of appellate counsel, and the superior court lacked jurisdiction. (Id.) The petition was denied without comment on January 24, 2020. (ECF No. 21-10.)

On January 29, 2020, petitioner filed a pro se petition for review in the California Supreme Court. Carpenter v. People of the State of Cal., Case No. S260580. (ECF No. 21-11.) Petitioner asked the court to review the issues raised in the lower courts by petitioner pro se and complained that appointed counsel failed to raise all of the issues petitioner requested. (Id. at 2-3.) On February 21, 2020, petitioner filed a request to stay proceedings in Case No. S260580 and transfer the habeas petition back to the California Court of Appeal for an evidentiary hearing to consider the merits of petitioner's habeas petition. (ECF No. 42-20.) On March 25, 2020, the California Supreme Court denied the petition for review without comment. (ECF No. 21-12.)

On August 11, 2021, petitioner signed a petition for writ of habeas corpus that was filed in the California Supreme Court. Carpenter v. Pollard, Case No. S270586. (ECF No. 42-21.) Petitioner raised eight claims for relief: four claims of ineffective assistance of counsel before trial, during trial and on appeal, prosecutorial misconduct, judicial misconduct, cumulative errors, and the California Supreme Court failed to hold a hearing or issue a ruling on petitioner's motion to transfer his case back to the California Court of Appeal or the Superior Court. (ECF No. 42-21.)

On August 17, 2022, the California Supreme Court denied the petition, citing See In re Clark (1993) 5 Cal. 4th 750, 767-769 (courts will not entertain habeas corpus claims that are

1    successive).)  (ECF No. 42-21.)

2       B.   The Federal Petition

3         This case was opened on May 4, 2020, based on petitioner's motion for extension of time,

4    but the habeas action was not commenced until July 22, 2020.  (ECF No. 12; see also ECF No. 8.)

5    On August 27, 2020, petitioner filed an amended petition.  (ECF No. 15.)  Respondent filed a

6    motion to dismiss.  On May 4, 2021, the court found that claims one through seven and claim

7    twelve were unexhausted and recommended that petitioner's motion for stay under Rhines v.

8    Weber, 544 U.S. 269 (2005), be granted.  (ECF No. 28.)  On June 14, 2021, the findings and

9    recommendations were adopted in full; respondent's motion to dismiss was partially granted, the

10    motion for stay was granted, petitioner was directed to file a motion to lift the stay within thirty

11    days from the date the California Supreme Court rendered its decision, and this matter was

12    administratively stayed.  (ECF No. 33.)

13         On September 7, 2022, the stay was lifted, and respondent was directed to respond.  (ECF

14    No. 40.)  On October 25, 2022, respondent lodged state court records.  (ECF No. 42.)  On

15    November 3, 2022, respondent filed an answer.  (ECF No. 43.)  On December 27, 2022,

16    petitioner filed a reply.  (ECF No. 46.)

17       C.   Petitioner's Amended Petition

18         Petitioner raises twelve claims in his amended petition:  (1) petitioner alleges the trial

19    court erred in failing to instruct the jury on crimes associated with the kidnapping, and raises

20    ineffective assistance of counsel based on trial counsel's failure to object to stacking charges

21    occurring during one continuing event, and appellate counsel's failure to appeal the issue to the

22    California Supreme Court; (2) ineffective assistance of counsel (Battle) by failing to investigate

23    and communicate with petitioner before trial; (3) ineffective assistance of trial counsel

24    (Rodriguez) before trial by failing to investigate or communicate with petitioner; (4) ineffective

25    assistance of trial counsel (Rodriguez) for lack of pre-trial investigation, preparation, and failure

26    to defend; (5) prosecutorial misconduct; (6) judicial misconduct, abuse of discretion, judicial

27    errors, denial of due process; (7) ineffective assistance of trial counsel (Rodriguez), denial of due

28    process, denial of fair trial; (8) Butte County Superior Court denied petitioner due process of law

1   and abuse of discretion by denying habeas corpus petition on procedural grounds; (9) ineffective

2   assistance of appellate counsel; (10) lack of jurisdiction by trial court to consider habeas corpus

3   petition CM042939; (11) ineffective assistance of appellate counsel by failing to investigate and

4   file habeas corpus petition with Court of Appeal; and (12) denial of due process by the California

5   Supreme Court.  (ECF No. 15.)

6   II.  FACTS

7   
8   
9   
10   Around 2:15 p.m. on October 22, 2014, Alicia B. was walking her bicycle down the street in Oroville. She intended to put air in her tires and ride to a friend's house. Before leaving, she called her ex-boyfriend, defendant, to check in and say hello. Defendant offered to give her a ride, but she declined. [FN 2] Defendant tracked down Alicia B. and insisted on giving her a ride in his truck. She refused, but after defendant grabbed [her] bicycle and put it in his truck's bed, she got in his truck.

11   
12   [FN 2] Alicia B. was a regular methamphetamine user who had used the drug with defendant. She had used methamphetamine that day.

13   
14   
15   As defendant drove off, he started to yell at [her], asking why she did not love him or want to be with him. When [she] requested to be let out of the truck, defendant drove faster and continued to ask why she did not love him. [She] tried to open the truck's door, but defendant grabbed her and stepped on the gas. She yelled for help; defendant told her to stop yelling. He also threatened to drive the truck into a pole and kill both of them.

16   
17   
18   Steering the truck with his leg, defendant grabbed Alicia B. by the hair and started to punch her. The truck eventually slowed down and almost stopped; she then pushed away from defendant and got out of the truck and onto the ground. Defendant got out of the truck, got on top of Alicia B., and choked her.

19   
20   
21   Marta Henry was in the parking lot at her office when she saw a white pickup truck swerving through the outside lane of the parking lot at a high speed. The truck's passenger door was open with an arm reaching out as if to prevent the person from falling out. A woman's voice screaming for help and an angry male voice came from inside the truck. Henry called 911.

22   
23   
24   Around 2:45 p.m. on the day of the incident, Paul Gaines, who was at home on his porch and about 300 feet from the road, saw a white Chevrolet S-10 pickup truck driving slowly. Hands and arms were flailing inside the truck. Gaines got in his car and drove toward the truck. A woman's shoe was in the road several hundred feet from his driveway, and the truck was stopped in the middle of the road.

25   
26   
27   Gaines saw a man on the side of the road, bent over a woman, with his knee in her chest. He had one hand on her throat and was also swinging at her. The woman was on her back and her face was

28   

5

1
2

> turning blue.  As Gaines walked up the woman got up and ran toward him while the man walked quickly to the truck and left.  The woman identified defendant as her assailant.

3      People v. David Lionel Carpenter, Case No. C082288 (Sept. 14, 2018) (ECF No. 21-2 at 2-3).[2]

4      III.  STANDARDS FOR A WRIT OF HABEAS CORPUS

5              An application for a writ of habeas corpus by a person in custody under a judgment of a

6      state court can be granted only for violations of the Constitution or laws or treaties of the United

7      States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation

8      or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire,

9      502 U.S. 62, 67-68 (1991).

10             Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

11     corpus relief:

12
13

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

14
15
16

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

17
18

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

19     28 U.S.C. § 2254(d).

20             For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of

21     holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v.

22     Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39-40

23     (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S.

24     362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly

25     established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859

26     (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may

27
28

---

[2]  After independently reviewing the record, this court finds the superior court's summary accurate and adopts it herein.

6

1    not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a

2    specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S.

3    58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam)).  Nor may it be

4    used to "determine whether a particular rule of law is so widely accepted among the Federal

5    Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further,

6    where courts of appeals have diverged in their treatment of an issue, there is no "clearly

7    established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77 (2006).

8          A state court decision is "contrary to" clearly established federal law if it applies a rule

9    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

10   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

11   Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

12   the writ if the state court identifies the correct governing legal principle from [the Supreme

13   Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[3]

14   Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

15   Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

16   the writ simply because that court concludes in its independent judgment that the relevant state-

17   court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

18   application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

19   550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

20   in its independent review of the legal question, is left with a firm conviction that the state court

21   was erroneous") (internal quotations and citation omitted).  "A state court's determination that a

22   claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

23   the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011)

24   (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

25   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

26   _____

27   [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28   384 F.3d 628, 638 (9th Cir. 2004)).

1   ruling on the claim being presented in federal court was so lacking in justification that there was

2   an error well understood and comprehended in existing law beyond any possibility for fair-

3   minded disagreement." Id. at 103.

4       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

5   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

6   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

7   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

8   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

9   considering de novo the constitutional issues raised.").

10      The court looks to the last reasoned state court decision as the basis for the state court

11  judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

12  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

13  previous state court decision, this court may consider both decisions to ascertain the reasoning of

14  the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

15  federal claim has been presented to a state court and the state court has denied relief, it may be

16  presumed that the state court adjudicated the claim on the merits in the absence of any indication

17  or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption

18  may be overcome by a showing "there is reason to think some other explanation for the state

19  court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on

20  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

21  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

22  merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a

23  state court fails to adjudicate a component of the petitioner's federal claim, the component is

24  reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

25      Where the state court reaches a decision on the merits but provides no reasoning to

26  support its conclusion, a federal habeas court independently reviews the record to determine

27  whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

28  Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo

1   review of the constitutional issue, but rather, the only method by which we can determine whether

2   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

3   reasoned decision is available, the habeas petitioner has the burden of "showing there was no

4   reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

5        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

6   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

7   just what the state court did when it issued a summary denial, the federal court reviews the state

8   court record to "determine what arguments or theories . . . could have supported the state court's

9   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

10  arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

11  Court." Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there

12  was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939

13  (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

14       When it is clear, however, that a state court has not reached the merits of a petitioner's

15  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

16  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

17  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

18  IV.  DISCUSSION

19       A.  Procedural Default

20       Respondent argues that the California Supreme Court's citation to In re Clark constitutes a

21  state procedural bar which precludes this court from addressing the merits of petitioner's claims

22  raised in that state court petition because it was successive.  (ECF No. 43, passim.)  Further,

23  respondent contends that petitioner's claims raised in the California superior court are also barred.

24  (ECF No. 43 at 10, citing ECF Nos. 21-6, 21-7.)  In his reply, petitioner contends that he should

25  be excused from the procedural default because he has demonstrated cause for the default and

26  resulting prejudice based on, inter alia, the ineffective assistance of counsel.  (ECF No. 46 at 8-

27  17.)

28       As a general rule, "[a] federal habeas court will not review a claim rejected by a state

1    court 'if the decision of [the state] court rests on a state law ground that is independent of the

2    federal question and adequate to support the judgment.'"   Walker v. Martin, 562 U.S. 307, 315

3    (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)).   However, courts have recognized that

4    "[p]rocedural bar issues are not infrequently more complex than the merits issues . . . so it may

5    well make sense in some instances to proceed to the merits if the result will be the same."

6    Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S.

7    518, 525 (1997); Cone v. Bell, 556 U.S. 449, 472 (2009) (where state courts did not reach merits

8    of claim due to procedural bar, claim is reviewed de novo).   Under the circumstances presented

9    here, the court finds that the alleged defaulted claims can be resolved more easily by addressing

10   them on the merits.   See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (explaining that courts

11   can "deny writs of habeas corpus under § 2254 by engaging in de novo review when it is unclear

12   whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of

13   habeas corpus if his or her claim is rejected on de novo review.); Ayala v. Chappell, 829 F.3d

14   1081, 1096 (9th Cir. 2016) (approving district court's determination that development of the

15   record regarding procedural default was unnecessary where claim clearly failed on the merits)

16   (citing Franklin, 290 F.3d at 1232.)

17          Accordingly, for those claims the state court did not address on the merits, the

18   undersigned will review such claims de novo.

19          B.   Petitioner's Claims

20                1.   *Associated Crimes (Claim One)*

21          In his first claim, petitioner alleges the trial court erred in failing to instruct the jury on

22   crimes associated with the kidnapping.   (ECF No. 15 at 5; ECF No. 42-21 at 38-39.)   On appeal,

23   petitioner's counsel argued that the jury should have been instructed that the movement was

24   incidental to the associated crimes, because counts 2 and 3 occurred while the kidnapping was

25   ongoing.   (ECF No. 42-10 at 18-26.)   Specifically, appellate counsel argued that the trial court

26   omitted the following portion of CALCRIM No. 1215:

27                        "Thus, in addition to considering the actual distance moved, you may
                     also consider other factors, such as, whether the distance the other
28                   person   was   moved   was   beyond   that   merely   incidental   to   the

                                                   10

commission of [blank line] <insert associated crime>, . . . ."
(ECF No. 42-10 at 21, citing CALCRIM No. 1215.)  Appellate counsel argued that the failure to
so instruct was prejudicial because a reasonable jury could have concluded that petitioner was
upset over the break-up with the victim and wanted to terrorize her, threaten her, and batter her,
and such omission deprived the jury of relevant factors in determining whether petitioner
substantially moved the victim, and deprived petitioner of his right to an accurate jury
determination of the facts under the Sixth and Fourteenth Amendments.  (ECF No. 42-10 at 27-
28.)

Respondent counters that petitioner failed to address the evidence recounted in the state
court's decision, simply claiming that the state decision was wrong about the effect of such
evidence under state law; such claim is unavailing because state court rulings on state law are
binding on this court.  (ECF No. 43 at 6.)  Further, such claim is barred procedurally; respondent
contends it was not fairly presented to the California Supreme Court because the claim was not
presented "in accordance with state procedures," and the successive petition again failed to justify
why such claim was omitted in the first petition filed in the California Supreme Court.

Petitioner did not address the jury instruction issue in his traverse.  (ECF No. 46, passim.)

a.  Last Reasoned State Court Decision

The California Court of Appeal rejected petitioner's jury instruction claim on appeal,
finding that under state law, petitioner's other offenses were not associated with the kidnapping;
therefore, liability for kidnapping hinged on finding petitioner's transportation of the victim
wasn't merely incidental to the other offenses.  Specifically, the state appellate court held:

> Defendant contends the trial court prejudicially erred in failing to
> instruct the jury on the crimes associated with the kidnapping.
>
> "Generally, to prove the crime of kidnapping, the prosecution must
> prove three elements: (1) a person was unlawfully moved by the use
> of physical force or fear; (2) the movement was without the person's
> consent; and (3) the movement of the person was for a substantial
> distance. [Citation.]" (*People v. Jones* (2003) 108 Cal.App.4th 455,
> 462, fn. omitted.)  To constitute kidnapping, "'the victim's
> movements must be more than slight [citation] or "trivial" [citation],
> they must be substantial in character . . . .' [Citation.]" (*People v.
> Martinez* (1999) 20 Cal. 4th 225, 233.) "[I]n determining whether the
> movement is '"substantial in character"' [citation], the jury should

11

consider the totality of the circumstances. Thus, in a case where the evidence permitted, the jury might properly consider not only the actual distance the victim is moved, but also such factors as whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes." (*Id.* at p. 237, fn. omitted.)   Also, "in a case involving an associated crime, the jury should be instructed to consider whether the distance a victim was moved was incidental to the commission of that crime in determining the movement's substantiality." (*Ibid.*)

As to the substantial distance element of kidnapping, the jury was instructed from the standard kidnapping instruction, CALCRIM No. 1215, as follows: "Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances . . . relating to the movement. But in addition to considering the actual distance moved, you may also consider other factors such as, whether the movement increased the risk . . . of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." Defendant did not object to this instruction or request additional instruction on associated crimes.

The Attorney General argues defendant's failure to object or request additional instruction forfeits his contention on appeal.   Since defendant's claim addresses instruction on an element of the crime and he asserts any forfeiture is a result of ineffective assistance of counsel, we address his claim on the merits.

The term "associated crime" is defined as "any criminal act the defendant intends to commit where, in the course of its commission, the defendant also moves a victim by force or fear against his or her will." (*People v. Bell* (2009) 179 Cal.App.4th 428, 438- 439 (*Bell*).) In *Bell*, the defendant met his ex-wife Jennings at her workplace so she could repay him some money. (*Id.* at p. 432.) The defendant was on parole; Jennings told the police he could be arrested that day by her workplace. (*Ibid.*) The defendant met Jennings, had lunch with her, and eventually parked his car near her work, where police boxed in his parked vehicle to facilitate an arrest for a parole violation. (*Ibid.*) As officers emerged from their vehicles with drawn guns, the defendant backed into the police vehicle behind him, drove forward at an officer, made an accelerated U-turn, and sped away with his ex-wife still in the vehicle. (*Ibid.*) The ensuing chase reached speeds of 70 to 80 miles per hour and the defendant ran several stop signs and a red light and drove on the wrong side of the road as he evaded the pursuing police. (*Id.* at p. 433.) At trial, the ex-wife testified that the defendant let her out after a few feet, but she told a police officer after the incident that she asked the defendant to be let out several times, but was not allowed out until the defendant stopped at an intersection about 70 yards away. (*Id.* at pp. 432-433.) The defendant was convicted of kidnapping and reckless evasion. (*Id.* at p. 431.) The Court of Appeal found "[t]he evidence supported a finding that

defendant intended to evade the police and did so recklessly. And from the evidence, the jury could have found that in the course of the evasion, Jennings was moved by force or fear against his will. Under these facts, the court should have instructed the jury that, in determining whether defendant's movement of Jennings was substantial, they could consider whether the movement was merely incidental to the crime of evasion (as one factor among others)." (*Id.* at p. 439.)

Another example of an associated crime is found in *People v. Williams* (2017) 7 Cal.App.5th 644 (*Williams*). Four robbers entered a store and forcibly moved a security guard and store employee about 50 feet to the break room, where they were ordered to lie down. (*Id.* at p. 671.) Those facts could not support convictions for simple kidnapping because the asportation was incidental to the robbery. (*Id.* at pp. 671-672.)

In *People v. Delacerda* (2015) 236 Cal.App.4th 282 (*Delacerda*), Emily's exboyfriend, the defendant, was at her apartment when she returned home after spending the night with a different ex-boyfriend. (*Id.* at pp. 284-285.) Emily told the defendant to leave; he accused her of cheating on him. (*Id.* at p. 285.) The defendant took out a revolver, put a bullet in the gun, and stood between Emily and the door. (*Ibid.*) After telling Emily he did not want to hurt her, he removed the bullet, put the gun on the table, and promised to leave if she let him read her e-mails. (*Ibid.*) Emily went to the bathroom and then her bedroom, where she opened her laptop and sat on the bed with the defendant. (*Id.* at p. 286.) When the defendant ordered her to show him the e-mails, Emily threw the laptop at him and tried to run away, but the defendant tackled her and dragged her back to the bed, where he told her to sit down. (*Ibid.*) Emily tried to run again while the defendant read her e-mails, but the defendant tackled her, and held her on the ground as he put a bullet in the gun. (*Ibid.*) He then put the gun in his mouth and pulled the trigger, after which, he pointed the gun at Emily's face and told her to shut up. (*Ibid.*) The defendant eventually locked Emily in a closet and read the e-mails, but she was able to get out of the closet, grab her keys, and run to the car. (*Id.* at pp. 286-287.) The distance from the front door to the closet was 22 feet and the distance from the area near the front door where Emily was tackled to the closet was about 30 to 40 feet. (*Id.* at p. 287.)

The defendant in *Delacerda* was convicted of simple kidnapping, false imprisonment, domestic violence battery, and assault with a firearm. (*Delacerda, supra,* 236 Cal.App.4th at p. 284.) The Court of Appeal found assault with a firearm was not an associated crime under these facts, but the domestic violence count did fit under the definition of associated crime stated in *Bell*, requiring a reversal of the kidnapping count. (*Ibid.*) "The evidence here was sufficient to show the relationship between the kidnapping and the domestic violence battery meets the associated crime test under *Bell*. The evidence supported a finding defendant willfully touched Emily in a harmful or offensive manner. And from the evidence, the jury could have found that in the course of that harmful or offensive touching, Emily was moved by force or fear against her will. Under these facts,

the court should have instructed the jury that in determining whether defendant's movement of Emily was substantial, they could consider whether the movement was merely incidental to the crime of domestic violence battery. [Citation.]" (*Id.* at p. 293.)

There is not the close relationship between the kidnapping and other offenses here as there was in *Bell*, *Williams*, and *Delacerda*. Unlike those cases, the kidnapping here was the first offense acted on and intended by defendant, who had already started moving Alicia B. against her will before he committed the domestic violence and criminal threats crimes. More importantly, defendant moved Alicia B. a far greater distance than the victims in those other cases. Alicia B. asked to get out of defendant's truck not long after getting in, and defendant drove her approximately seven miles before she got out and eventually escaped. The several miles she was moved considerably exceeded the 22 feet to 70 yards the victims were moved in *Bell*, *Williams*, and *Delacerda*. The movement here was not "natural" to the criminal threats and domestic violence counts. (See *People v. Salazar* (1995) 33 Cal.App.4th 341, 347 [movement of the victim was not "natural" to the rape and therefore not incidental for the purposes of kidnapping].) Defendant could have (and did) commit domestic violence against Alicia B. after he stopped moving her, and he did not have to move her to commit this crime. While the act of driving the truck was part of the criminal threat, where defendant threatened to kill them both by ramming his truck into a pole, the distance he drove Alicia B. far exceeded the distance he needed to drive to make or carry out this threat.

Since the evidence does not support a finding that the asportation was incidental to the domestic violence and criminal threats counts, instruction on associated crimes was not required.

Carpenter, Case No. C082288.  (ECF 21-2 at 3-7 (citations omitted).)

        b.  Analysis

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Estelle, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.) (federal courts are bound by state court rulings on questions of state law), cert. denied, 493 U.S. 942 (1989).

Here, the record demonstrates that the state court evaluated this claim under state law, and this court is bound by the state court's decision as to how petitioner's crimes were charged. Bradshaw, 546 U.S. at 76; Gutierrez v. Griggs, 695 F.2d 1195, 1197-98 (9th Cir. 1983) (ignoring

14

1   allegations that concerned the correctness of the state evidentiary rulings and jury instructions

2   since these were noncognizable state law claims).  Thus, to the extent petitioner contends the state

3   opinion was wrong about the effect of such evidence under state law, such claim is unavailing.

4   Bradshaw, 546 U.S. at 76.

5        Although instructional errors are cognizable in federal habeas corpus, they "generally may

6   not form the basis for federal habeas relief."  Gilmore v. Taylor, 508 U.S. 333, 344 (1993).  It is

7   not enough that the instruction was incorrect as a matter of state law.  Estelle, 502 U.S. at 71-72.

8   Habeas relief is available if "the ailing instruction by itself so infected the entire trial that the

9   resulting conviction violates due process."  Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141,

10  147 (1973) ).  "[A] single instruction to a jury may not be judged in artificial isolation but must be

11  viewed in the context of the overall charge."  Boyde v. California, 494 U.S. 370, 378 (1990)

12  (quoting Cupp, 414 U.S. at 146-47).  Due process does not require that an instruction be given

13  unless the evidence supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v.

14  Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  The defendant is not entitled to have jury

15  instructions raised in his or her precise terms where the given instructions adequately embody the

16  defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996).

17       In the instant case, the state superior court reasonably concluded that the evidence did not

18  support a finding that the asportation was incidental to the domestic violence and criminal threat

19  counts, so instructions on associated crimes was not required.  Such decision did not deprive

20  petitioner of due process.  The act of kidnapping began well before the instances of domestic

21  violence and criminal threat.  And these two additional counts did not involve substantial

22  movement.  Indeed, petitioner strangled the victim after the movement had stopped.  Therefore,

23  the jury was not required to consider whether the victim's movement was incidental to the crimes

24  of domestic violence and criminal threat.  To the extent the jury found that the victim was

25  substantially moved, such movement could only be attributed to kidnapping.  Thus, the evidence

26  did not support the inclusion of the merely incidental language, and, as a consequence, it was not

27  required by due process.  See Hopper, 456 U.S. at 611.

28       Further, even if omission of the merely incidental language was error, it was harmless.  A

15

jury instruction that omits an element of an offense is constitutional error subject to "harmless error" analysis.  See Neder v. United States, 527 U.S. 1, 8-11 (1999); Evanchyk v. Stewart, 340 F.3d 933, 940 (9th Cir. 2003).  The omission will be found harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  California v. Roy, 519 U.S. 2, 4-5 (1996) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Here, the jury was instructed on the charge of kidnapping and was specifically instructed that the jury "must consider all the circumstances relating to the movement," and "may," "in addition to considering the actual distance moved," "consider other factors such as whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection."  Clerk's Transcript ("CT") 153 (ECF No. 42-1 at 162).  Thus, the more substantial movement associated with petitioner's kidnapping count would have weighed more heavily in the juror's minds than the more insignificant movements incident to petitioner's other largely stationary crime (strangling, domestic violence).  Although the act of driving was part of the act of threatening to kill them by ramming his truck into a pole, the distance involved in the kidnapping far exceeded that needed to accomplish the criminal threat.  Accordingly, any additional consideration the jury would have given to such insignificant movements could not have had a substantial and injurious effect or influence in reaching the conclusion that petitioner had engaged in substantial movement sufficient to support the kidnapping charge.

Accordingly, the undersigned finds that the trial court's omission of the merely incidental language of CALCRIM 2015 did not deprive petitioner of due process and, even if it did, such omission was harmless error.  Further, the superior court's rejection of this claim was not contrary to, or an unreasonable application of clearly established law.  Petitioner is not entitled to habeas relief on this claim.[4]

---

[4]  It does not appear that this claim was properly presented to the California Supreme Court inasmuch as it was not specifically included in the initial petition for review filed by petitioner. (ECF No. 21-11.)  Rather, petitioner simply asked the state high court to review the issues

1          2.  *Ineffective Assistance of Counsel (Claims 1, 2-4, 7, 9 & 11)*

2          Due to the procedural default issues, there is no reasoned state court opinion addressing

3    these claims.  As discussed above, this court may exercise discretion in its management of the

4    case to reject the claim on the merits and forgo an analysis of procedural default.  See Berghuis,

5    560 U.S. at 390; Ayala, 829 F.3d 1096.

6              a.  Governing Standards

7          "The Sixth Amendment guarantees criminal defendants the effective assistance of

8    counsel."  Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam); see also Missouri v. Frye,

9    566 U.S. 134, 138 (2012) ("The right to counsel is the right to effective assistance of counsel.").

10   To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) his

11   counsel's performance was deficient, falling below an objective standard of reasonableness, and

12   (2) his counsel's deficient performance prejudiced the defense.  Strickland v. Washington, 466

13   U.S. 668, 687-88 (1984).  To establish deficient performance, "a court must indulge a strong

14   presumption that counsel's conduct falls within the wide range of reasonable professional

15   assistance; that is, the defendant must overcome the presumption that, under the circumstances,

16   the challenged action 'might be considered sound trial strategy.'"  Id. at 689 (citation omitted).

17   To establish prejudice, the defendant "must show that there is a reasonable probability that, but

18   for counsel's unprofessional errors, the result of the proceeding would have been different.  A

19   reasonable probability is a probability sufficient to undermine confidence in the outcome."

20   Strickland, 466 U.S. at 694.  However, the Court need not determine whether counsel's

21   performance was deficient before examining the prejudice the alleged deficiencies caused

22   petitioner.  See Smith v. Robbins, 528 U.S. 259, 286 n.14 (2000) ("'If it is easier to dispose of an

23   ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

24   followed.'" (quoting Strickland, 466 U.S. at 697)).

25         "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and

26   _____

27   petitioner raised in the lower courts.  (Id. at 1.)  The California Supreme Court denied the petition
     without comment.  (ECF No. 21-10.)  But even if this claim was not properly exhausted, this

28   court may deny the claim on the merits without exhaustion of state court remedies.  28 U.S.C.
     § 2254(b)(2).

                                            17

1    when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (internal citations

2    omitted).  When § 2254(d) applies, the "question is whether there is any reasonable argument that

3    counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

4              There is no state court opinion addressing any ineffective assistance of counsel claims.

5                        b.   Alleged Ineffective Assistance Related to Jury Instruction (Claim One)

6              In his first claim, petitioner also raises ineffective assistance of counsel claims based on

7    the trial counsel's failure to object to the omission of the merely incidental language of

8    CALCRIM 2015, trial counsel's failure to object to the stacking of three different charges during

9    one continuing event, and appellate counsel's failure to file for review in the California Supreme

10   Court.  (ECF Nos. 15 at 5; 42-21 at 38-39, 45, 85.)

11             Here, petitioner did not receive ineffective assistance of counsel because his trial counsel

12   failed to object concerning the omission of the merely incidental language or the alleged stacking

13   of charges.  Objectively reasonable trial counsel could have concluded that the omitted language

14   did not apply to petitioner's case, particularly where the act of strangling took place after

15   movement stopped, and the criminal threats did not involve substantial movement.  Moreover, the

16   substantial movement began first; the acts of domestic violence did not begin until after the two

17   began arguing and petitioner refused to allow the victim to exit the truck; the criminal threats took

18   place some time during such argument.

19             Similarly, objectively reasonable appellate counsel could have concluded that this

20   omission did not rise to the level of a due process violation because, as discussed above, due

21   process does not require that an instruction be given unless the evidence supports it.  See Hopper,

22   456 U.S. at 611.  Indeed, the record reflects that appellate counsel studied the state appellate

23   court's opinion, the successful reversal of petitioner's first strike prior conviction, the governing

24   law, and again reviewed petitioner's case, and "concluded that (1) there [was] no meritorious

25   legal ground for pursuing the appeal further and (ii) therefore further action would be

26   unsuccessful."  (ECF No. 15 at 77.)

27             Trial and appellate counsel are not required to raise weak or frivolous arguments.  See

28   Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Knowles v. Mirzayance, 556 U.S. 111, 125

                                                                   18

1  (2009); see also Rhoades v. Henry, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render

2  ineffective assistance in failing to investigate or raise an argument on appeal where "neither

3  would have gone anywhere").

4      Accordingly, in connection with petitioner's first claim, the performances of trial and

5  appellate counsel were not deficient under the first prong of Strickland.  Petitioner is not entitled

6  to habeas relief on the ineffective assistance of counsel claims raised in the context of his first

7  claim.

8           c.   Pretrial Counsel L. Battle's Alleged Failures (Claim Two)

9      In his second claim, petitioner alleges that he sustained ineffective assistance of trial

10  counsel based on pretrial counsel L. Battle's failure to investigate and communicate with

11  petitioner.  (ECF No. 15 at 7 (citing ECF No. 1 at 51-52); ECF No. 42-21 at 39, 46-48.)

12  Specifically, petitioner contends that before the preliminary hearing, Battle failed to investigate

13  witnesses, interview police officers, review evidence of petitioner's prior convictions, and

14  investigate petitioner's cell phone call history log, which would show the victim called petitioner

15  multiple times for a ride.  (ECF No. 1 at 51-52.)  Battle allegedly failed to interview petitioner

16  before the preliminary hearing.  (ECF No. 1 at 53.)  Petitioner contends that the "probable cause

17  determination by the court to hold . . . petitioner to answer was a result of incomplete information

18  by the defense in providing the court an inaccurate picture of the evidence."  (ECF No. 1 at 52.)

19  In his most recent petition filed in the California Supreme Court, petitioner argued that Battle

20  failed to communicate with petitioner before the preliminary hearing in order to prepare for the

21  Proposition 115 type hearing, which allegedly impacted petitioner's options, denying his rights to

22  a fair trial and due process.  (ECF No. 42-21 at 39.)  Petitioner again argued that the evidence

23  from his cell phone would demonstrate that the victim "harassed" petitioner into giving her a ride

24  because her bike had a flat tire, and that the GPS positioning information would rebut Henry's

25  testimony that she observed the truck.  (ECF No. 42-21 at 46-47.)

26           i.   Respondent's Answer

27      Respondent argues that petitioner's ineffective assistance of counsel claims as to Battle

28  are procedurally barred.  (ECF No. 43 at 6.)  Respondent contends that petitioner's claims as to

Battle's pretrial ineffectiveness also fail on the merits because petitioner "didn't allege attorney acts or omissions in connection with the constitutionally guaranteed 'trial,' but rather attorney acts or omissions in connection with a not-constitutionally-guaranteed preliminary hearing." (ECF No. 43 at 7) (citing Gerstein v. Pugh, 420 U.S. 103, 120 (1975) ("probable cause" to hold arrestee "pending further proceedings" can be "determined reliably without an adversary hearing" or "counsel" as an "adversary safeguard[]".)  Further, respondent argues that such claim is insubstantial because "a claim of defect in the manner of binding over for trial is no defect in the trial itself."  (ECF No. 43 at 7-8.)  In any event, respondent points out that petitioner fails to show he had personal knowledge of what Battle did or did not do, or what information was on the phone.  (ECF No. 43 at 8.)

_ii.  Petitioner's Reply_

In pertinent part, petitioner clarifies in his reply that after his trial, the trial court appointed investigator Evie Joseph to assist petitioner, and Joseph informed petitioner that both counsel Battle and Rodriguez "failed to investigate a single witness, check a single fact related to police." (ECF No. 46 at 3.)  Petitioner disputes respondent's claim that the issues with Battle were insubstantial because Rodriguez claimed he used Battle's files to prepare for trial.  (ECF No. 46 at 4.)

_iii.  Analysis_

Pretrial counsel Battle was appointed on May 1, 2015.  (ECF No. 42-1 at 14.)  On June 3, 2015, Battle was relieved, and counsel J. Rodriguez was appointed.  (ECF No. 42-1 at 68.)

In California, "[t]he purpose of the preliminary hearing is merely 'to establish whether there exists probable cause to believe that the defendant has committed a felony[.]'"  Galindo v. Superior Court, 50 Cal. 4th 1, 6 (2010) (quoting Cal. P.C. § 866(b) ); see also People v. Leon, 61 Cal. 4th 569, 596 (2015) ("At a preliminary hearing, the magistrate determines only whether probable cause exists.").  "That is the sole inquiry.  Guilt or innocence is not determined.  It is not a vehicle for discovery."  Curry v. Superior Court, 217 Cal. App. 4th 580, 588 (2013); Cal. P.C. § 866(b).  Thus, the question at the May 20, 2015 preliminary hearing was whether there was

1   probable cause to believe petitioner had committed the offenses charged in the felony complaint.[5]

2            Here, responding police officer Gates testified as to his interviews of the victim and

3   witness shortly after the alleged crimes.  (ECF No. 42-6 at 14-40.)  The prosecution admitted

4   photographic evidence of the victim's injuries to her shoulder and face.  (ECF No. 42-6 at 33-34.)

5   Lead investigator Sgt. Quihuiz, who lived next door to petitioner, identified petitioner as the

6   alleged perpetrator.  (ECF No. 42-6 at 46-47.)  Battle cross-examined both witnesses.  (ECF No.

7   42-6 at 40-42; 47-48.)  Battle argued that there was insufficient evidence to support a felony

8   charge under California Penal Code § 273.5.  (ECF No. 42-6 at 50.)  The court held petitioner to

9   answer on each count.  (ECF No. 42-6 at 50-51.)  Subsequently, the court allowed petitioner to

10  speak pro se; petitioner sought dismissal of all charges, and the court denied the request.  (ECF

11  No. 42-6 at 52.)

12           Petitioner cannot demonstrate prejudice from Battle's alleged failures that took place prior

13  to the May 20, 2015 preliminary hearing.  The prosecutor's burden during the preliminary hearing

14  was to show probable cause to believe that petitioner had committed a felony.  Cal. Penal Code

15  § 866(b).  Given the testimony concerning the crimes and evidence identifying petitioner as the

16  perpetrator, no reasonable probability existed that any of the actions proposed by petitioner would

17  alter the showing of probable cause.  Thus, petitioner cannot prevail on his claim that pretrial

18  counsel Battle was ineffective.

19              d.  Trial Counsel J. Rodriguez's Alleged Failures (Claims Three, Four and Seven)

20           In his third claim, petitioner alleges he suffered ineffective assistance of counsel before

21  trial by J. Rodriguez's alleged failure to investigate or communicate with petitioner.  (ECF No. 15

22  at 8-9 (citing ECF No. 1 at 54-56); ECF No. 42-21 at 40, 49-51, 86 (Petr.'s Ex. X (ECF No. 15 at

23  494).)  Specifically, petitioner contends Rodriguez relied on Battle's notes and investigation, and

24  did not contact petitioner until after the September 9, 2015 Marsden hearing, five days before the

---

25  [5]  Initially, defense counsel Battle moved to compel the prosecution to conduct a live preliminary
26  examination with live witnesses because petitioner believed his Sixth Amendment right to
    confrontation was violated by having a Proposition 115 preliminary hearing.  (ECF No. 42-6 at
27  13.)  California Penal Code § 872(b) allows peace officers with specified training or five years of
    experience to provide hearsay testimony during preliminary hearings.  Id.  The court denied the
28  motion for live examination.  (ECF No. 42-6 at 13.)

jury trial.  (ECF No. 1 at 54.)  Petitioner argued that Rodriguez could not have made a reasoned

tactical decision when he failed to interview petitioner.  (ECF No. 1 at 57.)  Petitioner argues

there were only two people in the truck and the kidnapping and criminal threats charges could not

be proven if the victim was cross-examined with the information she left on the petitioner's cell

phone (calls and texts).  (Id.)  Petitioner contends that Rodriguez "completely failed to investigate

the facts, the witnesses, or the audio tapes of the 911 callers," and "failed to conduct one

interview, request any information from [petitioner], and failed to file any motions for discovery,

or in limine," and did not obtain documents relevant to petitioner's prior convictions.  (ECF No. 1

at 58.)  In his most recent petition filed in the California Supreme Court, petitioner argued that

Rodriguez only visited petitioner once, for about an hour, the week before trial, and filed no

motions or witness lists and sought no discovery to determine whether any witness had a criminal

record.  (ECF No. 42-21 at 40, 49, 86.)  Petitioner claims all his efforts to reach counsel were

unsuccessful.  (ECF No. 42-21 at 49-50.)

    In his fourth claim, petitioner alleges trial counsel Rodriguez was ineffective based on his

lack of pretrial investigation, preparation, and failure to defend.  (ECF Nos. 15 at 10-11 (citing

ECF No. 1 at 59-64); 42-21 at 40-41, 52-58, 86-87.)  Specifically, petitioner contends Rodriguez

failed to conscientiously advocate for petitioner before and during trial due to his lack of

investigation, preparation, and refusal to file pretrial motions for discovery.  (ECF No. 1 at 59.)

Rodriguez testified at the Marsden hearing that Rodriguez had discussed the case with petitioner,

but petitioner maintains that Rodriguez failed to visit petitioner between June 10, 2015 through

September 9, 2015, and at no time did Rodriguez discuss petitioner's case.  (ECF No. 1 at 59.)

Petitioner pointed out that Rodriguez failed to call a single witness or present any evidence, even

though witnesses and evidence existed.  (ECF No. 1 at 60.)  Petitioner argued that even though

his brother brought petitioner's cellphone to the courtroom, Rodriguez refused to even look at the

information in the phone's memory but was only interested in keeping sex videos between

petitioner and the victim out of the prosecution's hands.  (Id.)  Petitioner believed the text

messages and call log had exculpatory value to show the victim's lack of fear and continued

contact with petitioner through November 2, 2015.  (ECF No. 1 at 61.)  Petitioner argued that

there was a medical report that Rodriguez could have used to impeach the medical account in Officer Gates' testimony, because the "medical expert at Oroville Hospital did not see any signs of the marks and or symptoms associated with strangulation," and counsel failed to object to the officer testifying as a medical expert. (Id. (citing Oroville Hospital "medical report").) Petitioner contended Rodriguez also failed to use such report containing the medical history and current use of illegal drugs by the victim to impeach her testimony. (ECF No. 1 at 61.) After the Marsden hearing, petitioner gave Rodriguez a list of witnesses and asked for an expert witness to educate the jury as to someone under the influence of methamphetamine and to inspect the photos taken by the police officers, but none were obtained, and Rodriguez solely relied on information supplied by the prosecution. (ECF No. 1 at 62.)

After trial began, petitioner contends Rodriguez failed to object to a lack of foundation for witness Henry's testimony, and Henry failed to identify petitioner or the victim. (ECF No. 1 at 62.) Despite the victim stating three different times that the route of travel did not go through the Social Services parking lot, and petitioner's position that Henry could not have witnessed the crimes, Rodriguez would not permit petitioner to speak to Rodriguez during the trial, only during recesses, and petitioner was only allowed to take notes and speak to the investigator Joseph during the trial. (ECF No. 1 at 62, 63.) Despite petitioner raising several issues concerning trial testimony, including, inter alia, improper questioning, leading questions, and the victim's changing testimony, petitioner contends Rodriguez did not raise a single objection during trial. (ECF No. 1 at 63.)

Further, petitioner argued that had Rodriguez conducted pretrial investigation of the prosecution witnesses, counsel would have discovered issues with the police report and how the victim was never sure of how she received her minor injuries. (ECF No. 1 at 65.) Petitioner contended that further investigation would have demonstrated inaccuracies in the police investigation and Officer Gates' "deceitful comments" concerning the condition of the victim, and Gates' testimony could have been impeached by the emergency room nurse's testimony as to the victim's injuries, or lack thereof. (Id.) Further, petitioner argued that Rodriguez failed to advance evidence concerning the victim's prior domestic violence issues, despite being told

1    during trial that the victim had such a police record which could have been used for impeachment.

2    (ECF No. 1 at 68.)  Petitioner maintained there was evidence from the 911 call from Gaines that

3    petitioner was pulling the victim from the truck, which would have rebutted the victim's

4    testimony that she attempted to exit the truck.  (Id.)  Petitioner contended the victim was removed

5    from the truck because she was being violent with petitioner.  (Id.)  Petitioner argued that

6    Rodriguez' "sole focus was in trying to get a settled plea agreement."  (ECF No. 1 at 69.)

7           In his petition filed in the California Supreme Court, petitioner argued that Rodriguez's

8    failure to investigate and prepare for trial deprived petitioner of material to impeach witnesses

9    with their faulty statements, denying petitioner his right to due process, fair trial, and the

10   assistance of counsel at trial.  (ECF No. 42-21 at 40-41.)  Petitioner contended that he was

11   "embroiled in major disagreements and conflicts" with Rodriguez, and forced to go to trial with

12   an attorney who did not communicate or advocate for petitioner because the court denied his

13   Marsden motion.  (ECF No. 42-21 at 52.)  Petitioner reiterated that at the time Rodriguez rested,

14   counsel had done no investigation; failed to call any witness; failed to introduce evidence from

15   petitioner's cell phone, from a methamphetamine addiction expert, or evidence demonstrating that

16   the victim had no signs of strangulation, including the medical report that would have

17   contradicted Officer Gates' testimony and impeached the victim; and Rodriguez failed to object

18   to Gates' testimony as a "medical expert," and failed to challenge Henry's ability to witness the

19   crimes.  (ECF No. 42-21 at 53-58.)  Petitioner argued that Rodriguez failed to review records of

20   petitioner's prior convictions to determine whether they were supported by sufficient evidence to

21   constitute strikes.  (ECF No. 42-21 at 57.)  Further, petitioner argued that Rodriguez refused to

22   defend the case, claiming "the prosecutor did not prove the case beyond a reasonable doubt, and

23   the court would dismiss due to insufficient evidence," despite petitioner having a defense for the

24   kidnapping count.  (ECF No. 42-21 at 53, 86) (citing People v. Isitt, 55 Cal. App. 3d 23, 24

25   (1976) ("defendant's reasonable good faith belief that the victim has voluntarily consented to

26   accompany him constitutes complete defense to charge of kidnapping).)  Petitioner argued that

27   Rodriguez was not truthful when questioned during petitioner's motion for new trial, giving two

28   opposing answers for failing to impeach the testimony of witness Gaines.  (ECF No. 42-21 at 87.)

1    In his seventh claim, petitioner also claims ineffective assistance of trial counsel

2    Rodriguez, and alleges denial of due process and denial of a fair trial.  (ECF Nos. 15 at 16 (citing

3    ECF No. 1 at 88, 89-92:6); 42-21 at 43-44, 73-77, 88.)  Petitioner argued that the cumulative

4    errors of Rodriguez, set forth in detail above, deprived petitioner of the effective assistance of

5    counsel.  (ECF No. 1 at 88-90, 91.)  In support of his claims, petitioner noted that he was

6    appointed new counsel (Foster) to represent him at his motion for new trial.  (ECF No. 1 at 90.)

7    Petitioner argued that the actions taken by Foster demonstrate what actions Rodriguez should

8    have taken in representing petitioner, including investigating the case, interviewing petitioner,

9    and witnesses, filing motions for late discovery, and researching pertinent case law.  (ECF No. 1

10   at 90.)  Petitioner argued that Foster was able to show the court that the police officers were

11   allowed to misstate facts.   (ECF No. 1 at 90.)  Further, Rodriguez gave conflicting responses

12   when asked to explain his trial strategy, and petitioner argued Rodriguez did not discuss trial

13   strategy with him prior to trial.  (ECF No. 1 at 91.)  Had Rodriguez investigated petitioner's case,

14   petitioner argued that Rodriguez would have learned that the street where the victim was picked

15   up was not Table Mountain as the prosecutor claimed at trial.

16   In his petition filed in the California Supreme Court, petitioner also argued that the

17   cumulative errors of Rodriguez, set forth in detail above, deprived petitioner of the effective

18   assistance of counsel.   (ECF No. 42-21 at 43-44, 73-77.)  Petitioner added that Rodriguez failed

19   to object to the court commenting on petitioner's custody status to the jury before deliberations.

20   (ECF No. 42-21 at 44.)  And he argued that Rodriguez failed to impeach witness Gaines with his

21   arrest record showing crimes of moral turpitude, and failed to call the witnesses Foster identified

22   who would testify as to the victim's violent behavior.  (ECF No. 42-21 at 74, 87.)

23                    *i.    Respondent's Answer*

24   Respondent argues that all of petitioner's ineffective assistance of trial counsel claims are

25   procedurally barred.  (ECF No. 43 at 7.)  Respondent contends that only one trial counsel claim

26   had merit -- petitioner's argument that trial counsel "failed to recognize insufficiency of proof on

27   a prior." (ECF No. 43 at 2.)  However, petitioner's current custody arises from the judgment

28   following retrial of the prior conviction, thus precluding any connection between such theory of

ineffective counsel and petitioner's present custody.  (ECF No. 43 at 2, 8.)  Respondent argues

the remainder of petitioner's ineffective assistance of counsel claims lack substance and also lack

"proof of petitioner's personal knowledge or theories of helpful evidence with competent proffers

of admissible evidence that would have appeared in a hypothetical trial."  (ECF No. 43 at 8

(footnotes omitted).)

### ii. Petitioner's Reply

In reply, petitioner argues in pertinent part that investigator Joseph informed petitioner

that Battle and Rodriguez "failed to investigate a single witness, check a single fact related to

police."  (ECF No. 46 at 3.)  To date, petitioner has not received his case file from Rodriguez.

### iii. Analysis

Initially, the Court notes that it is not required to address petitioner's ineffective assistance

of trial counsel claims in connection with whether or not trial counsel investigated petitioner's

prior convictions because petitioner's appeal was granted, and he was retried on the prior

conviction.  The Court agrees with respondent that the retrial of petitioner's prior conviction

precludes any connection between petitioner's theory of ineffective assistance of counsel and

petitioner's present custody.

Second, as to plea offers, before the preliminary hearing, the prosecution offered to allow

petitioner to plead guilty to Count 1, California Penal Code § 207, and Count 2, California Penal

Code § 273.5(a), with only one strike alleged, which would have avoided the three strike sentence

petitioner ultimately sustained.  (ECF No. 42-6 at 11.)  Such offer was revoked prior to the

preliminary hearing.  (Id.)  Petitioner confirmed that during his first meeting with trial counsel

Rodriguez, petitioner informed Rodriguez that "there was not going to be any plea agreements

short of complete dismissal of the charges."  (ECF No. 1 at 69.)

Finally, this Court finds that all of petitioner's ineffective assistance of trial counsel

claims fail on the prejudice prong of Strickland.  Petitioner fails to demonstrate, with competent

evidence, that but for the alleged ineffective assistance of either defense counsel, the verdict

would have been different.  The record evidence against petitioner was strong.

First, the victim testified that petitioner insisted on giving the victim a ride, put her bike in

26

1   the back of the truck, and then she got in the truck.  Reporter's Transcript on Appeal ("RTA")

2   116 (ECF No. 42-6 at 115).  After she got in the truck, petitioner started yelling at her, asking

3   why she did not want to be with him, why she did not love him.  (Id.)  The victim asked petitioner

4   to let her out, but petitioner just drove faster.  RTA 117 (ECF No. 42-6 at 116.)  The victim

5   testified that she tried to get out, but petitioner "grabbed" her, and her foot got stuck in the door.

6   RTA 118 (ECF No. 42-6 at 117).  The victim testified she yelled for others to help her.  RTA

7   118-19 (ECF No. 42-6 at 117-18).  The victim testified that petitioner told her to "stop yelling,"

8   "just stop," "stop or he would kill us both" by "Run[ning] into a pole."  RTA 119-20 (ECF No.

9   42-6 at 118-19).  "At one point [petitioner] had [her] by [her] hair, punching [her]" "while

10  steering with his leg."  RTA 120 (ECF No. 42-6 at 119).  Finally, the victim "pushed [herself]

11  away from [petitioner.]  Forced [herself] out, and [petitioner] had [her] by [her] hair."  RTA 121

12  (ECF No. 42-6 at 120).  At this point, the truck was almost stopped; the victim fell on the ground

13  and grabbed a bush to keep petitioner from getting her back into the car.  Id.  The victim testified

14  that petitioner got out, got on top of her and began choking her with his hands on her neck, and

15  she had trouble breathing.  Id.

16        Second, the victim's testimony was corroborated by Paul Gaines, who was a third party

17  percipient witness who did not know either petitioner or the victim prior to October 22, 2014.

18  Gaines testified as follows.  Gaines saw petitioner, who was bent over and battering the victim

19  while his knee was on the victim's chest and had one hand wrapped around her throat while

20  hitting her with his other hand.[6]  RTA 162 (ECF No. 42-6 at 161).  Gaines saw the victim was

21  turning blue.  Id.  Gaines testified that the victim was "under distress.  She was extremely freaked

22  out," and confirmed she was crying, shaking, and having trouble breathing and speaking.  RTA

23  163-64 (ECF No. 42-6 at 162-63).  The victim told Gaines that David Carpenter "was trying to

24  kill her."  RTA 164 (ECF No. 42-6 at 163).

25  _____

26  [6]  The testimony of a single witness is sufficient to uphold a conviction.  Bruce v. Terhune, 376
    F.3d 950, 957-58 (9th Cir. 2004) (per curiam); United States v. Larios, 640 F.2d 938, 940 (9th

27  Cir. 1981) ("The testimony of one witness, even that of an informant, is sufficient to uphold a
    conviction.") (citations omitted).  A jury's credibility determinations are entitled to near-total

28  deference.  Bruce, 376 F.3d at 957.

1    Third, Officer Gates testified as to the victim's appearance: "She was disheveled,

2    distraught," "she had been crying and her face was red and blotchy and breathing heavily,

3    difficulty speaking." RTA 174-75 (ECF No. 42-6 at 173-74). Her clothes had grass and other

4    debris on them. RTA 175 (ECF No. 42-6 at 174). "She had tear streaks on her face," "her

5    breathing was rapid," and she was "visibly shaking," Id. Her face was "red" and "appeared to be

6    swollen." Id. Her left leg "had an abrasion that was actively bleeding." Id. Gates noticed

7    bruising on her right shoulder next to her neck and "some marks on the other side of her neck as

8    well, right next to her shoulder." RTA 176 (ECF No. 42-6 at 175). On her arms, Gates testified

9    he saw "scratch marks and lateral. It looked like bruising, dark red marks that went across her

10   upper left arm." Id.

11       Such strong evidence supports this Court's finding that petitioner fails to meet the

12   prejudice prong of Strickland.

13       Petitioner's focus on the misidentification of the street on which petitioner traveled, and

14   his dispute as to whether the victim exited the truck herself or petitioner pulled her out, do not

15   rebut the victim's testimony that petitioner refused to let her out of the truck, threatened to kill

16   her, and battered and attempted to strangle her, and do not refute that her shoe was found yards

17   away from where she exited the vehicle. How the victim exited the vehicle does not rebut third

18   party Gaines' testimony that he witnessed petitioner batter and strangle the victim. Similarly,

19   whether or not the victim "harassed petitioner for a ride" or voluntarily entered the truck does not

20   rebut the victim's testimony that she soon wanted out of the truck, but petitioner refused. In

21   addition, the jury was instructed on how to evaluate consent, as well as the withdrawal of consent.

22   CT 154 (ECF No. 42-1 at 163).

23       Petitioner's claim that he could have impeached Gaines' testimony with Gaines' juvenile

24   record is unsupported with competent evidence.[7] Further, it is unlikely that the trial court would

25   _____

26   [7] Petitioner provided a document entitled "Summary of Criminal Histories of the People's
     Witnesses," which contains no attribution or source information. (ECF No. 15 at 488.) It appears

27   likely this is the document referred to during the hearing on petitioner's motion for new trial;
     counsel Foster objected that the document was created by the prosecution. (See ECF No. 42-7 at

28   98.)

1   have admitted such evidence.  Indeed, at the hearing on petitioner's motion for new trial, the trial

2   court found that it was likely such evidence would have been excluded under Evidence Code

3   Section 352.  Reporter's Augmented Transcript 8 (ECF No. 42-8 at 12).

4        Petitioner's putative witnesses who might have testified that the victim continued to

5   contact and be with petitioner after the October 22, 2014 incident would not rebut the direct

6   testimony that during such incident, the victim was in sustained fear at the time of the crimes and

7   shortly thereafter.  Officer Gates testified he arrived 22 minutes after being dispatched to the

8   scene at 2:40 p.m. and provided his personal observations of the victim's sustained fear.  RTA

9   174-75 (ECF No. 42-6 at 173-74).  In addition, the victim testified that she left the hospital

10   because she was alone and scared.  RTA 135 (ECF No. 42-6 at 134).  The record supports the

11   jury's finding that the victim was in sustained fear.

12        With regard to impeaching witness Gates' testimony that he claimed to see petechia in the

13   victim's eye, Officer Quihuiz testified he did not see any evidence of petechia.  RTA 153 (ECF

14   No. 42-6 at 152).  Thus, such issue was also a question of fact for the jury to determine, and they

15   were provided a photograph of the victim's face to evaluate all of the trial testimony in

16   conjunction therewith.  Further, at the hearing on petitioner's motion for a new trial, the triage

17   nurse from the Oroville Hospital emergency department testified that she did not see petechia, but

18   she also confirmed that the lack of petechia does not mean that someone was not strangled.  (ECF

19   No. 15 at 623-24.)  The nurse confirmed that someone can be the victim of strangulation even

20   without physical marks on the neck, or lack of shortness of breath or throat swelling.  (ECF No.

21   15 at 621-22.)  The nurse confirmed she listed multiple abrasions as the victim reported such

22   injuries.  (ECF No. 15 at 623, 624.)  There was direct testimony from the victim and witness

23   Gaines of the attempted strangulation, so whether or not there was petechia is not relevant,

24   particularly in light of the testimony concerning the victim's inability to breathe.

25        Despite petitioner's myriad efforts to catalog every failure of trial counsel Rodriguez, the

26   Court is not persuaded that the outcome of this trial would have changed had counsel taken the

27   steps suggested by petitioner.  The victim admitted at trial that she was a regular user of

28   methamphetamine, and that she used methamphetamine on the day of the incident.  RTA 113,

1    128 (ECF No. 42-6 at 112, 127).  Showing that the victim had been using methamphetamine for

2    three years would not alter the victim's testimony that petitioner refused to let her out of the

3    truck, struck her and attempted to strangle her and threatened to ram the truck into a pole, killing

4    them both.  This is particularly true in light of third party Gaines, who witnessed petitioner

5    battering and attempting to strangle the victim.

6            While petitioner argues that the victim's testimony lacked credibility because she is a

7    methamphetamine addict and appears to contend that witness Gaines' testimony lacked credibility

8    based on some unverified juvenile records, "it is the responsibility of the jury - not the court - to

9    decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith,

10   565 U.S. 1, 2 (2011).  This Court "'must respect the province of the jury to determine the

11   credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from

12   proven facts by assuming that the jury resolved all conflicts in a manner that supports the

13   verdict.'"  Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997) (quoting Walters v. Maass, 45

14   F.3d 1355, 1358 (9th Cir. 1995)).

15           In light of the above, the Court finds that petitioner is not entitled to relief on his

16   ineffective assistance of trial counsel claims three, four and seven.

17                   e.   Appellate Counsel's Alleged Failures (Claims Nine and Eleven)

18           In claim nine, petitioner contends appellate counsel failed to provide adequate

19   representation on direct appeal, failed to raise all arguable grounds for appellate review, without

20   consulting petitioner and despite petitioner's requests that counsel include them, and failed to

21   advance the appeal to the California Supreme Court for review.  (ECF No. 15 at 17, citing ECF

22   No. 1 at 29 (supporting facts).)  Instead, appellate counsel only raised issues she considered

23   "necessary."  (ECF No. 1 at 19.)  Petitioner contends that appellate counsel has a fundamental

24   duty to raise every issue that has any likelihood of success, either in the Court of Appeal or a

25   higher court, and that would benefit the client if successful.  (ECF No. 1 at 30, primarily relying

26   on California authorities.)

27           The Strickland principles also apply to determining ineffective assistance of appellate

28   counsel claims.  Evitts v. Lucey, 469 U.S. 387 (1985).  A habeas petitioner must show that, but

                                            30

1  for appellate counsel's failure to raise the relevant claims, there is a reasonable probability that

2  the petitioner would have been successful on appeal.  In the absence of such a showing, neither

3  Strickland prong is satisfied.  See Pollard v. White, 119 F.3d 1430, 1435-37 (9th Cir. 1997);

4  Miller v. Keeney, 882 F.2d 1428, 1435 (9th Cir. 1989).

5           Petitioner requested that counsel raise every arguable claim on appeal, but counsel

6  refused.  However, contrary to petitioner's arguments, appellate counsel does not have a

7  constitutional obligation to raise every nonfrivolous issue on appeal.  Jones v. Barnes, 463 U.S. at

8  754.  Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those

9  more likely to prevail, far from being evidence of incompetence, is the hallmark of effective

10  appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463

11  U.S. at 751-52).  Thus, counsel is not required to present every nonfrivolous claim on behalf of a

12  defendant appealing his conviction.  See Smith v. Robbins, 528 U.S. at 288 ("[A]ppellate counsel

13  who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may

14  select from among them in order to maximize the likelihood of success on appeal.") (citation

15  omitted); accord Jones v. Barnes, 463 U.S. at 754 ("For judges to second-guess reasonable

16  professional judgments and impose on appointed counsel a duty to raise every "colorable" claim

17  suggested by a client would disserve the very goal of vigorous and effective advocacy. . . .")

18  Appellate counsel's letters confirm that she chose to pursue only nonfrivolous claims on appeal.

19  (ECF No. 15 at 59-63.)  Based on her experience and training, petitioner's appellate counsel

20  concluded that petitioner's claims of ineffective assistance of trial counsel and failure to challenge

21  the 911 call as hearsay, which were not raised on direct appeal, lacked merit.  (ECF No. 15 at 60.)

22  As described above, this court has reached the same conclusion, and finds that appellate counsel's

23  decision to press only claims with arguably more merit was "within the range of competence

24  demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).

25           Further, on November 17, 2018, appellate counsel advised petitioner that she "concluded

26  that (1) there is no meritorious legal ground for pursuing the appeal further, and (ii) therefore

27  further action would be unsuccessful."  (ECF No. 15 at 77.)  Thus, the record reflects that

28  appellate counsel made a reasoned decision that pursuing an appeal in the California Supreme

31

1    Court was not appropriate.  Petitioner has not identified a claim that but for appellate counsel's

2    failure to pursue such claim to the California Supreme Court, there is a reasonable probability that

3    petitioner would have been successful.  Thus, petitioner cannot prevail on his claim that appellate

4    counsel was ineffective in failing to file such appeal.

5                    f.   Failure to Investigate and File Habeas Petition (Claim Eleven)

6           In claim eleven, petitioner contends that appellate counsel was ineffective by failing to

7    investigate and file a habeas corpus petition with the Court of Appeal.  (ECF No. 15 at 18, citing

8    ECF No. 1 at 33.)

9           "There is no constitutional right to an attorney in state post-conviction proceedings."

10   Coleman v. Thompson, 501 U.S. 722, 752 (1991), abrogated in part on other grounds by Martinez

11   v. Ryan, 566 U.S. 1, 8, 17 (2012).  "Because there is no constitutional right to an attorney in state

12   postconviction proceedings," . . . "a petitioner cannot claim constitutionally ineffective assistance

13   of counsel in such proceedings."  Id. (internal citations omitted).  Accordingly, petitioner's

14   appellate attorney cannot be ineffective based on her failure to investigate or file a state habeas

15   petition.[8]

16                   3.   *Prosecutorial Misconduct (Claim Five)*

17          Petitioner claims the prosecutor committed misconduct by using deceptive tactics to gain

18   petitioner's unjust conviction, by using improper testimony, failing to correct untruthful

19   testimony by prosecution witnesses, and deceiving the court with false statements.  (ECF No. 15

20   at 16 (citing ECF No. 1 at 70-76:1-12).)  In support, petitioner contends that at his arraignment,

21   the prosecutor threatened petitioner that if he did not accept a 15 year sentence immediately,

22   petitioner would spend the rest of his life behind bars.[9]  (Id. (ECF No. 1 at 72).)  Petitioner claims

23   _____

24   [8]  Indeed, on October 12, 2017, appellate counsel informed petitioner in writing that her
     appointment was limited to the direct appeal and such appointment did not include representing
25   petitioner in any extraordinary writ.  (ECF No. 15 at 60-61.)  Appellate counsel advised petitioner
     he could file a pro se petition, but also warned petitioner that "by filing a habeas petition that
26   omits issues, the right to file a later petition may be lost because of the rule against multiple
     successive petitions."  (ECF No. 15 at 61) (citing In re Clark, 5 Cal. 4th at 750).

27   [9]  Petitioner also claims that agents of the prosecutor interfered with petitioner's ability to

28

1  the prosecutor withheld reports from Officer Cooley and inflated charges that did not exist.

2  Petitioner argues that the RAP sheet shows the victim failed to appear, which "gives rise to Ms.

3  Moore's reliability;" this was kept from the defense during trial.  (Id. (ECF No. 1 at 74).)

4  Petitioner contends the prosecution attempted to deceive the jury by failing to acknowledge that it

5  was impossible for witness Henry to witness what happened.  Further, petitioner argues the

6  prosecutor committed misconduct in closing argument by bolstering the credibility of the victim

7  and violating petitioner's right to remain silent by telling jurors that not answering questions is a

8  sign of guilt.  (Id. (ECF No. 1 at 75, citing Reporter's Transcript at 190:11-12).)

9         Due to the procedural default issues discussed above, there is no reasoned state court

10  opinion addressing the alleged prosecutorial misconduct claims.

11         A defendant's due process rights are violated when a prosecutor's misconduct renders a

12  trial "fundamentally unfair."  Darden v. Wainwright, 477 U.S. 168, 181 (1986); see also Donnelly

13  v. DeChristoforo, 416 U.S. 637, 643 (1974) (explaining that prosecutorial misconduct rises to the

14  level of a constitutional violation only where it "so infected the trial with unfairness as to make

15  the resulting conviction a denial of due process").  Determining whether a due process violation

16  occurred requires an examination of the entire proceedings so the prosecutor's conduct may be

17  placed in its proper context.  See Boyde, 494 U.S. at 385 ("the arguments of counsel . . . must be

18  judged in the context in which they are made").  But even if prosecutorial misconduct rises to the

19  level of a due process violation, such "violation may provide the grounds for granting a habeas

20  petition only if that misconduct . . . 'had [a] substantial and injurious effect or influence in

21  determining the jury's verdict.'"  Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (quoting

22  Brecht, 507 U.S. at 637).

23         Initially, the Court observes that the prosecutor's alleged threat in attempting to gain

24  _____

25  communicate with defense counsel (ECF No. 1 at 70), but such claims are largely based on the
   conditions of his confinement at the jail.  For example, petitioner complains about how his

26  placement in administrative segregation limited his ability to call defense counsel, the jail's
   intercom phone system was not operative, and he was unable to use a razor to prepare for court,

27  etc.  (ECF No. 1 at 70-72.)  Petitioner provides no facts or evidence tying the prosecutor to such
   issues and fails to demonstrate, with competent evidence, how such issues constitute prosecutorial

28  misconduct.

1   petitioner's plea bargain was not misconduct.  "Bringing additional charges because a defendant
2   is not willing to plea bargain constitutes permissible prosecutorial discretion."  United States v.
3   Stewart, 770 F.2d 825, 829 (9th Cir. 1985), cert. denied, 474 U.S. 1103 (1986).  Further, "electing
4   not to bring [some charges] initially and utilizing them as a latent bargaining tool" is
5   constitutionally permissible.  United States v. Allsup, 573 F.2d 1141, 1143 (9th Cir.) (footnote
6   omitted), cert. denied, 436 U.S. 961 (1978); see also United States v. Noushfar, 78 F.3d 1442,
7   1446 (9th Cir. 1996) (during plea negotiations, prosecutors may threaten additional charges and
8   may carry through on this threat); Johnson v. Woodford, 2010 WL 5313310, at *5 (C.D. Cal.
9   Nov. 1, 2010), report and recommendation adopted, 2010 WL 5317327 (C.D. Cal. Dec. 15, 2010)
10  (even if prosecutor added charges, prisoner's contention that such conduct was unconstitutional
11  stacking charges to coerce a plea was unavailing).

12      Second, petitioner's reference to a RAP sheet in the context of his claim that the victim
13  failed to appear is unclear.  In any event, the record demonstrates that the victim testified at trial,
14  which cured any earlier failure to appear.  RTA 113-40 (ECF No. 42-6 at 112-39).  To the extent
15  petitioner contends that the prosecution failed to provide defense counsel with a copy of the
16  victim's RAP sheet, petitioner fails to demonstrate how such failure had a substantial or injurious
17  influence on the verdict.  By cross-examination, defense counsel extensively impeached the
18  victim's credibility by focusing on her use of methamphetamine and her inability to remember
19  specific details of the crimes.  Even if the trial court had allowed admission of the victim's
20  purported prior conviction for domestic violence, which was unlikely, whether or not the victim
21  had acted violently in the past does not rebut witness Gaines' testimony that petitioner was
22  battering and choking the victim.  The victim's credibility was before the jury, and the jury
23  obviously believed the victim as corroborated by the eyewitness.

24      Third, petitioner's vague and conclusory claim that the prosecutor withheld reports from
25  an "Officer Cooley" is unsupported by facts or competent evidence demonstrating such reports
26  would have had a substantial effect on the verdict.[10]  "Conclusory allegations which are not

27  _____

28  [10]  Any claim that the prosecution violated state law in failing to provide discovery materials to

34

1    supported by a statement of specific facts do not warrant habeas relief."  See Jones v. Gomez, 66

2    F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).[11]

3         Fourth, petitioner claims that the prosecutor misstated the evidence by arguing that

4    witness Henry heard the victim cry for help.  RTA 238 (ECF No. 42-6 at 237).  However, the

5    record reflects that witness Henry testified that she saw the truck swerving back and forth and a

6    female voice was "screaming, Somebody help me, please."  RTA 95 (ECF No. 42-6 at 93).

7    Henry explained that the scream was "bloodcurdling.  It clearly was a scream for help."  (Id.)

8    Thus, the prosecutor did not misstate Henry's testimony.  In addition, petitioner contends the

9    prosecutor told the jurors that "movement is not an element of kidnapping."  (ECF No. 1 at 75)

10   (citing Reporter's Transcript 189:26-190:5).  However, petitioner misread the prosecutor's

11   argument.  At this point, the prosecutor addressed defense counsel's arguments concerning

12   inconsistent testimony as to where the victim was coming from and going to, and argued that

13   where the victim was going was a red herring because where the victim was going is not one of

14   the elements of kidnapping.  (Id.)  The prosecutor did not argue that movement is not an element

15   of kidnapping.

16        Fifth, petitioner contends that the prosecutor's comment that the victim was

17   "straightforward and honest" (RTA 240 (ECF No. 42-6 at 239)) bolstered the victim's credibility.

18   (ECF No. 1 at 75.)  The Court's review of the record reveals that the prosecutor did not use the

19   prestige of the government to bolster the victim's credibility, and she did not suggest that the

20   prosecutor was privy to information not presented at trial that supported the victim's testimony.

21   See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993) ("[v]ouching consists of

22   placing the prestige of the government behind a witness through personal assurances of the

23   witness's veracity, or suggesting that information not presented to the jury supports the witness's

24   testimony").  Rather, the prosecutor attempted to persuade the jury that the victim was telling the

25   the defense is, of course, not cognizable in this federal habeas corpus proceeding.  Estelle, 502

26   U.S. at 67-68; Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

27   [11]  Petitioner also claims the prosecutor attempted to deceive the court with lies about the
     availability of the People's last witness (id.), but the witness was simply called out of order and

28   petitioner fails to demonstrate how this was deceitful or violated petitioner's constitutional rights.

1  truth, immediately explaining that "everything [the victim] said regarding the offenses that the

2  defendant is charged with is corroborated by other witnesses."  RTA 240 (ECF No. 42-6 at 239).

3  In the context of her closing argument, the prosecutor's comment was not improper.

4        Sixth, petitioner claims the prosecutor violated his right to remain silent by "telling jurors

5  that not answering questions is a sign of guilt."  (ECF No. 1 at 75.)

6        The Fifth Amendment forbids the prosecution from commenting on a criminal defendant's

7  decision not to testify.  Griffin v. California, 380 U.S. 609, 615 (1965).  The Supreme Court has

8  not decided whether pre-arrest silence may be used as evidence of guilt.  See Jenkins v.

9  Anderson, 447 U.S. 231, 236 n.2 (1980) ("Our decision today does not consider whether or under

10  what circumstances pre-arrest silence may be protected by the Fifth Amendment."); see also

11  United States v. Oplinger, 150 F.3d 1061, 1067 (9th Cir. 1998) ("Although the Supreme Court

12  has held that the government may comment on a defendant's pre-arrest silence for impeachment

13  purposes, it has yet to rule on the constitutionality of the use of pre-arrest, pre-Miranda silence as

14  substantive evidence of guilt.") (internal citation omitted), overruled on other grounds by United

15  States v. Contreras, 593 F.3d 1135 (9th Cir. 2010).[12]  However, the Ninth Circuit has held that

16  "neither due process, fundamental fairness, nor any more explicit right contained in the

17  Constitution is violated by the admission of the silence of a person, not in custody or under

18  indictment, in the face of accusations of criminal behavior."  Oplinger, 150 F.3d at 1067; United

19  States v. Beckman, 298 F.3d 788, 795 (9th Cir. 2002) ("The use of a defendant's pre-arrest, pre-

20  Miranda silence is permissible as impeachment evidence and as evidence of substantive guilt.").

21

22  [12]  In a plurality opinion, the Supreme Court has held that the defendant's Fifth Amendment rights
    were not violated when the defendant remained silent when asked certain questions during a pre-
23  custody and pre-Miranda interview.  Salinas v. Texas, 570 U.S. 178 (2013).  While defendant
    Salinas answered most questions, he remained silent when asked if ballistics testing would
24  establish that shell casings from the crime scene would match the defendant's firearm.  Id.  The
    prosecutor argued the defendant's silence suggested he was guilty.  Id.  The plurality opinion
25  concluded that the noncustodial nature of the interview put Salinas' "situation outside the scope
    of Miranda" because Salinas did not "expressly invoke the privilege against self-incrimination in
26  response to the officer's question."  Salinas, at 181.  While the plurality opinion only garnered
    three votes, two other justices concurred in the opinion but did so on the grounds that pre-
27  custodial silence did not give rise to self-incriminating testimony, even if Salinas had invoked his
    Fifth Amendment rights.  Salinas, at 191-92 (Thomas, J., concurring).
28

Here, review of the record confirms that the prosecutor did not comment on petitioner's failure to testify or his post-arrest right to remain silent.  (ECF No. 42-6 at 234-47; 254-57.) Rather, the prosecutor argued, "And you have the defendant who doesn't come in to answer any questions for six months."  Reporter's Transcript 190 (ECF No. 15 at 469); RTA 257 (ECF No. 42-6 at 256).  Further, the prosecutor did not claim that such failure was a sign of guilt.  Id.  Such comment cannot be construed as a reference to petitioner's failure to testify or his post-arrest right to remain silent.  Because there was no constitutional error under Griffin, petitioner's claim should be denied.

Finally, even assuming that the prosecutor's comments that the victim was honest or that petitioner failed to come in for questioning constituted misconduct, the Court has reviewed the record as a whole and finds there is no possibility the prosecutor's remarks "so infected [petitioner's] trial with unfairness as to make [his] resulting conviction a denial of due process." Darden, 477 U.S. at 181; see also Sassounian v. Roe, 230 F.3d 1097, 1107 (9th Cir. 2000) (determining, in part, that the petitioner was not denied a fair trial due to prosecutorial misconduct because "the misconduct was isolated").  As discussed above, the evidence against petitioner was strong.  Further, the jury instructions mitigated any possible prejudice.  The jury was specifically instructed that statements made by the attorneys during trial are not evidence.  (CT at 134 (ECF No. 42-1 at 143); RTA at 207 (ECF No. 42-6 at 206); see Furman v. Wood, 190 F.3d 1002, 1006 (9th Cir. 1999) ("In determining [whether prosecutorial misconduct is grounds for federal habeas relief], it is appropriate to consider whether the jury was instructed to decide solely on the basis of the evidence rather than counsel's arguments, and whether the state's case was strong.")  The Court presumes that the jury followed the instructions it was given.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Petitioner is not entitled to relief on claim five.

*4.  State Court Issues*

a.  Judicial Misconduct and Errors (Claim Six)

In his sixth claim, petitioner alleges "judicial misconduct, abuse of discretion, judicial

////

1  errors, denial of due process."  (ECF No. 15 at 16 (citing ECF No. 1 at 79, 80-84).)[13]

2  Specifically, he alleges the trial court failed to protect petitioner's rights by, inter alia, failing to

3  conduct inquiries into petitioner's allegations of prosecutorial misconduct, abusing its discretion

4  by failing to replace trial counsel Rodriguez, not correcting defense counsel's alleged failures to

5  act during trial, and not controlling the trial proceedings according to law.  (ECF No. 1 at 79-84.)

6      Respondent argues such claims are barred by petitioner's successive petition, but such

7  claims lack merit because the Constitution does not require "judicial action when defense counsel

8  does not demand it."  (ECF No. 43 at 9) (citing see New York v. Hill, 528 U.S. 110, 114-15

9  (2000)).

10      There is no reasoned state court opinion addressing these issues.

11      On direct appeal in federal court, the standard for reversal based on general judicial

12  misconduct is stringent – there must be an "extremely high level of interference by the trial judge

13  which creates a pervasive climate of partiality and unfairness."  Duckett v. Godinez, 67 F.3d 734,

14  740 (9th Cir. 1995) (internal quotations omitted).  On habeas, the standard is even more stringent:

15  relief is warranted only if "the state trial judge's behavior rendered the trial so fundamentally

16  unfair as to violate federal due process. . . ."  Id.

17      This Court has carefully reviewed the record and concludes that the trial judge's purported

18  failures to intercede on petitioner's behalf did not render petitioner's trial fundamentally unfair.

19  Accordingly, petitioner is not entitled to relief on claim seven.

20      b.  Denials by State Courts (Claims Eight and Twelve)

21      In his eighth claim, petitioner alleges that the Butte County Superior Court denied

22  petitioner due process of law and abused its discretion by failing to consider his original habeas

23  corpus petition (ECF No. 21-6) on the merits, and by failing to consider petitioner's response to

24  answers supplied for questions #8 and #10 with supporting documents.  (ECF No. 15 at 16-17,

25  citing ECF No. 1 at 27[a][b]).)

26      In claim twelve, petitioner contends that he was denied due process because the California

27

28  ---
[13]  Petitioner also refers to exhibits attached to his 814 page amended petition, but he does not cite
a specific exhibit number or page number.  (ECF No. 15 at 16:11.)

1    Supreme Court denied the petition for review without an evidentiary hearing on the merits of his

2    original petition.  Despite asking the California Supreme Court to stay the petition and transfer

3    the habeas petition back to the state appellate court for an evidentiary hearing, the California

4    Supreme Court denied the petition for review without comment on March 25, 2020.

5           Respondent contends these claims are barred but should also be denied:

6                  This Court must deny relief on a claim that constitutional due process
                   compels a state court to engage in collateral review of a conviction,
7                  so long as "reasonable jurists who considered the question before"
                   had not reached that conclusion.[fn45] And reasonable jurists had
8                  held there is " 'no due process right to collateral review at all' "
                   [fn46] -- much less a right to make a claim at all upon " 'failure to
9                  comply with a reasonable procedural or evidentiary rule.' "[fn47]
                   That likewise defeats a theory that the California Supreme Court's
10                 merits rejection of the claim was unreasonable.  (The same reasons
                   necessarily bar relief on a claim (ECF 15 at 18-19) that constitutional
11                 due process compelled the California Supreme Court to engage in
                   greater collateral review on the petition presented to that court on the
12                 initial state habeas round.)

13   (ECF No. 43 at 10) (text of footnotes omitted).

14          There is no reasoned state court opinion addressing this claim.

15          Petitioner's arguments that the state courts rejected his claims on collateral review without

16   sufficient consideration or using improper procedures fail to state a federal claim.  No

17   constitutional provision or federal law entitles petitioner to any state collateral review,

18   Pennsylvania v. Finley, 481 U.S. 551, 557 (1987), much less review "on the merits" or review

19   with an evidentiary hearing.  Unless state collateral review violates some independent

20   constitutional right, errors cannot form the basis for federal habeas corpus relief.  See Franzen v.

21   Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) ("a petition alleging errors in a state post conviction

22   review proceeding are not addressable through federal habeas corpus"); see also Silversky v.

23   Frink, 500 F. App'x 625, 626 (9th Cir. 2012) ("A federal habeas petition is not the proper vehicle

24   for addressing the adequacy of process provided to Silversky in state post-conviction

25   proceedings."), cert. denied, 569 U.S. 952 (2013); Enno v. Blades, 357 F. App'x 754, 756 (9th

26   Cir. 2009) (Tashima, J., concurring) ("Whatever his remedy may be for asserted errors of

27   constitutional dimension in his state post-conviction proceeding, it is not under [28 U.S.C.]

28   § 2254.") (citing Franzen, 877 F.2d at 26).  Petitioner failed to demonstrate that the state courts'

39

1  handling of his claims violated his due process rights or any other constitutional right.  Therefore,

2  petitioner is not entitled to relief on claims eight and twelve.

3                               c.   <u>Trial Court Lacked Jurisdiction (Claim Ten)</u>

4       Petitioner argues that the trial court lacked jurisdiction to consider and rule on petitioner's

5  original habeas petition, Case No. CM042939, because it is a conflict of interest for a court to rule

6  on its own errors.  (ECF No. 15 at 17, <u>citing</u> ECF No. 1 at 31.)  Petitioner objects that the trial

7  judge addressed the petition for habeas relief as well as petitioner's resentencing, allegedly

8  constituting a conflict of interest.  (ECF No. 1 at 31) (citing Cal. Civ. Proc. § 170.1(b)).

9       Respondent contends relief on this claim is barred because the Constitution does not

10  govern whether a state court judge is disqualified from deciding a case; rather, the issue of

11  disqualification is one "merely of legislative discretion."  (ECF No. 43 at 11) (<u>citing</u> <u>Tumey v.</u>

12  <u>Ohio</u>, 273 U.S. 510, 523 (1927); <u>accord</u> <u>Federal Trade Commission v. Cement Institute</u>, 333 U.S.

13  683, 702 (1948); <u>McKinney v. United States</u>, 487 F.2d 948, 949-50 (9th Cir. 1973); <u>Stevenson v.</u>

14  <u>Los Angeles Superior Court</u>, 2019 WL 2437001, at *4 (C.D. Cal. June 10, 2019).)

15       In reply, petitioner contends that "[t]he superior court judge had a duty to recuse herself

16  due to the conflict presented by being a party to this petition."  (ECF No. 46 at 2) (citing Cal. Civ.

17  Proc. Code § 170.1(6)(A); <u>Fuller v. Superior Court</u>, 125 Cal. App. 4th 623, 627 (2004) (holding

18  that under California Penal Code § 859c, a defendant's habeas petition was wrongfully heard by

19  the same judge who had denied the defendant's motion to dismiss her misdemeanor charge.)

20       There is no reasoned state court opinion addressing this claim.

21       <u>Analysis</u>

22       California Code of Civil Procedure § 170.1(b) provides that "[a] judge before whom a

23  proceeding was tried or heard shall be disqualified from participating in any appellate review of

24  that proceeding."  <u>Id.</u>

25       Initially, the Court observes that petitioner's allegations are incorrect.  Contrary to

26  petitioner's claim in his reply, Judge Merrifield was and is not a party to this petition.  Judge

27  Merrifield did address the petition for writ of habeas corpus, Case No. CM042939, (ECF No. 21-

28  7 at 3), but Judge Mosbarger presided over petitioner's jury trial (ECF Nos. 21-1 at 1; 42-6 at 1),

1  as well as the hearing on petitioner's motion for new trial (ECF No. 42-7 at 15).[14]  Thus, no

2  conflict exists.

3         But even if the same judge had addressed the habeas petition, petitioner's reliance on

4  Fuller is unavailing for two reasons.  First, California Penal Code § 859c only applies to pretrial

5  proceedings and does not apply to post-trial habeas petitions.  Kaddoura v. Cate, 2012 WL

6  2609847, at *7 (E.D. Cal. July 5, 2012).  Second, issues of state law are not cognizable on federal

7  habeas review.  Estelle, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus

8  relief does not lie for errors of state law.'"), quoting Lewis, 497 U.S. at 780; Stevenson, 2019 WL

9  2437001 at *4 (citing Maas v. Superior Court, 1 Cal. 5th 962, 980 (2016) ("When the judge

10  assigned to examine and rule on [a state] habeas corpus petition is the same judge who presided at

11  the petitioner's criminal trial, there is no judge better suited for making a determination of the

12  issues raised in [the] petitioner's petition, and the petitioner is not permitted at that point to mount

13  a peremptory challenge under section 170.6.") (internal quotations and citation omitted).

14         This Court is aware of no authority prohibiting state court judges from hearing collateral

15  review petitions in cases where they presided over the underlying criminal trial or that such act

16  alone would violate a criminal defendant's constitutional right to due process.  Nevertheless, as

17  discussed above, errors in the state post-conviction review process are not addressable through

18  federal habeas corpus proceedings because such errors do not attack the constitutionality of the

19  prisoner's conviction.  See Franzen, 877 F.2d at 26.

20         Because petitioner's eighth claim asserts an error in the state's post-conviction review

21  process, it does not present cognizable grounds for federal habeas relief and should be denied.

22  V.  CONCLUSION

23         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

24  habeas corpus be denied.

25         These findings and recommendations are submitted to the United States District Judge

26  _____

27  [14]  Following remand, Judge Merrifield presided over the court trial on petitioner's prior
conviction as well as his resentencing.  But such proceedings did not involve any appellate review
28  of petitioner's criminal jury trial at issue here and did not involve any review of Judge
Merrifield's own rulings.

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2   after being served with these findings and recommendations, any party may file written

3   objections with the court and serve a copy on all parties.  Such a document should be captioned

4   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

5   he shall also address whether a certificate of appealability should issue and, if so, why, and as to

6   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

7   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

8   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

9   service of the objections.  The parties are advised that failure to file objections within the

10  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

11  F.2d 1153 (9th Cir. 1991).

12  Dated:  June 14, 2024

13

14                                      CHI SOO KIM
                                        UNITED STATES MAGISTRATE JUDGE

15  /1/carp0908.157

16

17

18

19

20

21

22

23

24

25

26

27

28